Niles HYSELL, Plaintiff,

v.

MERCANTILE STORES CO., and Leon F. Winbigler, Defendants.

No. 86 Civ. 5518 (SWK).

United States District Court,
S.D. New York.

Sept. 25, 1989.

Herman E. Cooper, P.C., New York City, for plaintiff.

Curtis, Mallet–Prevost, Colt & Mosle by Mark H. O'Donoghue, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Niles Hysell, formerly an employee of defendant Mercantile Stores ("Mercantile"), brought this action against defendant pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging wrongful forced retirement based on age discrimination. Defendants have moved for partial summary judgment on the issue of the willfulness of the alleged violation of the ADEA.

## BACKGROUND

These facts are adopted from defendants' statement of facts provided pursuant to local rule 3(g) [1] and from this Court's concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

---

**1.** Local rule 3(g) states that the party moving for summary judgment shall annex to the motion papers

"a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried....

The papers opposing a motion for summary judgment shall include a separate, short and

prior ruling in this matter,[2] familiarity with which is assumed. In the spring of 1985, an officer of the Mercantile Stores Co. inquired of Mercantile's outside labor counsel as to the applicability of the Age Discrimination in Employment Act ("ADEA") to its employee, Niles Hysell. Specifically, Mercantile's Vice President Roger Ciskie asked whether the "bona fide executive" exception, 29 U.S.C. § 631(c)(1), to the Act's general proscription against age discrimination in hiring, promotion, wages, and firing applied to Hysell, the merchandise manager of Mercantile's dress division.

On May 5, 1985, Mercantile's labor counsel replied to Ciskie's inquiry with a letter advising Ciskie that Hysell was "a 'bona fide executive' within the ADEA's meaning of that term." The letter concluded that "Hysell is subject to the exemption and can lawfully be required to retire at age 65 or above." Letter from Atty. William C. Martucci, of the law firm Spencer, Fane, Britt & Browne, dated May 8, 1985, attached as Exhibit A to Affidavit of Roger Ciskie in support of defendants' motion for partial summary judgment (hereinafter "Martucci letter").

On April 30, 1986, relying upon this advice from counsel, Mercantile retired Hysell, who had recently turned 65. On July 15, 1986 plaintiff initiated this lawsuit alleging age discrimination. His second amended complaint, dated March 25, 1987, alleges that defendant's conduct willfully violated the ADEA. Second Amended Complaint at ¶ 21. On October 29, 1987, in response to interrogatories by defendant, plaintiff represented that he would not argue that any ADEA violation was "willful within the meaning of 29 U.S.C. § 621 *et seq.*"

Defendant then moved this Court on April 15, 1988 for summary judgment on all of plaintiffs' claims. This motion was denied by order of this Court, January 25, 1989, which found a genuine issue of material fact as to whether plaintiff was a bona fide executive under the statutory exemption.

Subsequently, on April 13, 1989, plaintiff's counsel Cooper informed defendant by letter that Cooper made an "unintentional misstatement" in his October 1987 answers to interrogatories when he denied that any ADEA violation by Mercantile was willful. Counsel's letter said that Hysell "will contend that his involuntary retirement was a willful violation of" the ADEA.

Shortly thereafter, defendants again moved this Court for partial summary judgment, this time on the issue of willfulness, which is the question now before the Court.

## DISCUSSION

### Standards for Summary Judgment

The standards for summary judgment were discussed by this court in the previous memorandum opinion and order on defendants' motion for summary judgment, and are abbreviated here. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). All ambiguities must be resolved against the movant, *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party may defeat the motion by pointing to "specific facts showing that there is a genuine issue for trial," Rule

Plaintiff has not filed an opposition 3(g) statement specifically controverting the facts in defendants' 3(g) statement, and as stated in this opinion, they are deemed admitted.

**2.** Memorandum Opinion and Order denying defendants' motion for summary judgment, dated January 25, 1989, 1989 WL 6635.

56(e). A showing of a genuine issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*The Effect of a Prior Denial of Summary Judgment on this Motion.*

■ Plaintiff contends that this motion for partial summary judgment on the issue of willfulness is precluded by this Court's earlier denial of defendant's motion for summary judgment.

It is axiomatic that no res judicata effect will not attach to claims not "actually litigated." *See, e.g., Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874, 104 S.Ct. 2794, 2798, 81 L.Ed.2d 718 (1984). Here, defendants have not had an opportunity to present the issue of lack of willfulness before the court because it was not at issue during the time of the original summary judgment motion. While it is true that plaintiff raised the issue of willfulness at the time of his second amended complaint, a subsequent answer to interrogatory denied that he would pursue a liquidated damages claim based on willfulness. It was only after this Court ruled on the defendant's initial summary judgment motion that plaintiff acknowledged his inadvertent failure to include his allegation of willfulness within the answer to the interrogatory. Defendants are entitled to this Court's full consideration of the existence of a genuine issue of material fact regarding willfulness, and have not yet been afforded that opportunity. Therefore, this motion for partial summary judgment is properly before the Court.

*The Willfulness Provision of the ADEA.*

■ The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978). However, the ADEA was amended in 1978 and again in 1982 to exempt certain high-ranking employees from the protections of the Act:

Nothing in this Act shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age and who, for the 2-year period immediately before retirement, is employed in a *bona fide executive or a high policymaking position*, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equals, in the aggregate, at least $44,000.

29 U.S.C. § 631(c) (emphasis added). In its previous memorandum and order, this Court found that the applicability of this exception to Hysell was a genuine issue of material fact in this litigation.

The enforcement provisions of the ADEA are set forth in 29 U.S.C. § 626, which provides in part "[t]hat liquidated damages shall be payable only in cases of willful violations of this Act." 29 U.S.C. § 626(b). The leading ADEA case on the issue of willfulness is *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (hereinafter *"TWA"*). That case indicates that liquidated damages are "punitive in nature," 469 U.S. at 125, 105 S.Ct. at 624.

In *TWA*, the Supreme Court affirmed the Second Circuit's standard of willfulness, and explained that "a violation of the Act was 'willful' if 'the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" 469 U.S. at 126, 105 S.Ct. at 624 (quoting *Air Line Pilots Ass'n, Inc. v. Trans World Airlines*, 713 F.2d 940, 956 (2d Cir.1983)). The Supreme Court expressly rejected a definition of willfulness that turned on whether the employer "simply knew of the potential applicability of the ADEA." *TWA, supra*, 469 U.S. at 127, 105 S.Ct. at 625.

In the *TWA* case, officials of the airlines met with counsel soon after the ADEA was amended in order to determine the lawfulness of their retirement policy. The attorneys concluded that the then-existing policy was not in compliance with the new provisions, and recommended a new policy, which the airline adopted in modified form.

*TWA, supra,* 469 U.S. at 129, 105 S.Ct. at 625. The Supreme Court held that this procedure did not constitute willful violation of the Act, and therefore, that the pilots were not entitled to liquidated damages. The Court concluded that "[t]here simply is no evidence that TWA acted in 'reckless disregard' of the requirements of the ADEA." *Id.* at 130, 105 S.Ct. at 626.

Similarly, there is no evidence of willful violation of the Act in this case. Defendant (movant) has met its initial burden of demonstrating the absence of a genuine issue of material fact regarding willfulness. As in *TWA,* officials of Mercantile consulted with their attorneys in order to discover the lawfulness of their proposed forced retirement of Hysell. After receiving counsels' letter to the effect that, in their opinion, Hysell's position did come within the "bona fide executive" exemption to the ADEA, the company executed its plan to retire Hysell.

Plaintiff-respondent, in an effort to establish the existence of a genuine and material factual question, points to various inferences of willfulness that a jury might draw from this set of facts. He suggests that a jury would be entitled to conclude that defendants intentionally kept counsel "in the dark" about Hysell's actual responsibilities in order to use counsel as a "rubber-stamp" for a willful violation of the ADEA. Plaintiff's memorandum of law at 9. Alternatively, plaintiff suggests that a jury could infer that defendants, in cahoots with its counsel, asked its attorneys to "come up with a 'letter for the file,'" so that defendants could create the illusion that defendants were acting in good faith reliance on counsel's advice. *Id.*

These allegations by plaintiff do not defeat defendant's initial showing of an absence of triable issues. Plaintiff offers no evidence, either by deposition, answers to interrogatories, admissions on file, or affidavit, in support of either of these theories. In fact, Mercantile's senior management did apprise labor counsel Martucci of Hysell's position in the company, the nature of his duties, and his place in the management hierarchy. The Martucci letter reads in part:

> We first looked at the question in the context of Mr. Hysell's current status. Hysell is the merchandise manager of a major division, the dress division. There are approximately 15 merchandise managers in various divisions, including casual dresses, shoes, accessories, coats, men's wear, boys' wear, intimate apparel, etc. Approximately 20 buyers work under the direct supervision of Hysell. Last year, the annual sales volume for the dress division was approximately $120 million.
>
> Hysell's position requires that he play a significant role in deciding the lines selected, prices of the various items, merchandising policy, etc. . . . Although the final decision concerning termination of the employment of a buyer is made by the Chairman of the Board and the President, as a practical matter Hysell's recommendation would carry great weight.

Martucci letter at 1.

Furthermore, Martucci explicitly considered these factors in rendering advice to his clients:

> In viewing the overall Mercantile corporate management structure, we believe that the 'bona fide executive' exemption would apply to all the heads of various group (or regional) operations. . . . We base our opinion in large part on the following statement from the Conference Committee Report, which is quoted in the EEOC regulation.

[quoting from 29 C.F.R. § 1625.12(d)(2)]:

> "Typically, the head of the significant and substantial local or regional operation of a corporation [or other business organization], such as a major production facility or retail establishment, but not the head of a minor branch, warehouse, or retail store, would be covered by the term 'bona fide executive.'"

*Id.* at 4; brackets in original. Without passing on the correctness of legal advice contained therein, the Court notes that the five-page letter, really a memorandum of law, does appear to be a good faith applica-

tion of law to fact. It quotes from relevant passages of the ADEA and the EEOC regulations, and duly applies the law to the facts of Hysell's employment.

There is no factual basis for plaintiff's assertion that a genuine issue exists as to whether the attorney letter was the product of either information withheld from counsel or bad-faith collusion with counsel. The allegations that Hysell raises are conclusorily made in plaintiff's opposition memorandum, and are not supported by either a 3(g) statement or any reasonable inference from the factual record before this Court. These doubts are of the "metaphysical" variety that courts are explicitly instructed to disregard when considering summary judgment motions. *Matsushita, supra,* 475 U.S. at 586, 106 S.Ct. at 1355.

Therefore, this Court finds that defendant has met its burden of demonstrating the absence of a genuine issue of material fact going to the question of the willfulness of the alleged violation of the ADEA. This holding affects only the measure of damages and does not go to the merits of plaintiff's ADEA claim.

### CONCLUSION

For the reasons stated above, defendant's motion for partial summary judgment is granted.

SO ORDERED.