**In re L.G.H. ENTERPRISES, INC., Debtor.**

**L.G.H. ENTERPRISES, INC., Plaintiff,**

**v.**

**KADILAC MORTGAGE BANKERS, LTD., Defendant.**

**Bankruptcy No. 090–71612–21. Adv. No. 091–7180–21.**

United States Bankruptcy Court, E.D. New York.

July 17, 1992.

**614**

Charles A. Termini, Keith & Shapiro, Garden City, for debtor, plaintiff.

Michael B. Raphan, Ackerman & Raphan, Oceanside, N.Y., for defendant.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge.

Before the Court is a motion for summary judgment by the defendant, Kadilac Mortgage Bankers, Ltd. ("Kadilac") in this adversary proceeding brought by the debtor, L.G.H. Enterprises, Inc. ("LGH") on December 18, 1991. The adversary proceeding seeks to disallow two claims filed by Kadilac and to avoid as usurious under New York law the two mortgages on which these claims rest. Kadilac denies any violation of New York's usury law and pleads as an affirmative defense, that pursuant to 12 U.S.C. § 1735f-7, it is "exempt from New York State laws that limit the amount of interest which may be charged for a mortgage loan as a matter of law."

According to LGH's schedules, it owns three parcels of real property: (1) 29 Greene Avenue, Sayville, New York, valued at $320,000 (the "Sayville Property"); (2) 7 Park Avenue, Babylon, New York, valued at $250,000 (the "Babylon Property"); and (3) 72 Farrington Street, Bay Shore, New York, valued at $160,000 (the "Bay Shore Property").

Kadilac holds mortgages on all three properties and holds judgments of foreclosure and sale stayed by the filing of the debtor's petition.

Proofs of claim were filed by Kadilac based on the mortgages and judgments respecting the Babylon and Sayville Properties (no proof of claim has been filed with respect to the Bay Shore Property).[1]

The complaint alleges that LGH entered into the two mortgage agreements with Kadilac, secured by mortgages on the Babylon and Sayville Properties, that the interest rate required to be paid on the principal on each mortgage is 24.5%, and that one of the properties, a one-family dwelling, was transferred to LGH for the purpose of making the loan and charging a usurious interest rate; that both mortgage agreements are in violation of the New York State General Obligations Law § 5-501 and New York State Banking Law § 14-a. Judgment is requested pursuant to 11 U.S.C. § 502(b)(1) "expunging and voiding the mortgages in favor of the defendant ..."

Kadilac is moving for summary judgment on two grounds: (1) that LGH, as a corporation, is barred from claiming usury pursuant to New York's General Obligations Law, § 5-521 and (2) that defendant, as a federally-approved lender, is exempt from state usury laws under 12 U.S.C. §§ 1735f-7 and 1735f-5 and "Title V, Part V, § 501."[2]

### The Summary Judgment Motion

Under the Local Bankruptcy Rules of this Court, a motion for summary judgment must be supported by a statement of uncontroverted facts.

■ Local Rule 22(b) provides:

(b) Motions for Summary Judgment. Upon any motion for summary judgment, there shall be annexed to the notice of

---

**1.** The complaint confuses the three properties and asks for a decree invalidating the mortgages on the Sayville and Bay Shore Properties, although the claims it seeks to disallow and the mortgages it describes relate to Sayville and Babylon, not to Bay Shore.

**2.** Although both LGH and Kadilac cite 12 U.S.C. § 1735f-7, they argue the merits of Kadilac's claim under 12 U.S.C. § 1735f-7(a), which the Court assumes is the section both intended since it applies to loans made after March 31, 1980.

motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. *All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party* (emphasis supplied).

The rule is almost identical to Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts. Factual assertions in a Rule 3(g) statement which are not "directly contradicted" by an opposing Rule 3(g) statement are deemed admitted. *National Union Fire Ins. Co. v. Antony,* No. 87 CIV. 1310, 1988 WL 49040, at *7 (S.D.N.Y. May 9, 1988); *see also Star–Kist Foods, Inc. v. Goldstein,* No. 87 CIV. 2377, 1988 WL 132844 at *4 (S.D.N.Y. Dec. 9, 1988) (papers opposing summary judgment motion must 'isolate, focus and properly controvert the matters set forth' in a 3(g) statement). Perfunctory statements, vague charges, and conclusory allegations made in an opposition brief are not enough to defeat a motion for summary judgment. *Bank of China v. Chan,* No. 88 CIV. 0232 MBM, 1990 WL 53007 (S.D.N.Y. April 23, 1990), *rev'd in part on other grounds,* 937 F.2d 780 (2d Cir.1991); *Hysell v. Mercantile Stores Co.,* 736 F.Supp. 457 (S.D.N.Y.1989).

Kadilac's Rule 22(b) Statement sets forth the following facts as uncontroverted:

(1) LGH is a domestic corporation which has been in existence since at least December 1, 1980;

(2) Since January 1989, Lance Galvin has been its sole officer, director and shareholder;

(3) On September 8, 1989, LGH owned 3 parcels of improved real estate in Bay Shore, Sayville and Babylon, New York;

(4) Kadilac is a federally-approved mortgage lender on several federal programs;

(5) LGH borrowed $145,000 from Kadilac on Sept. 8, 1989;

(6) LGH executed two promissory notes on that date, one for $70,000 and the other for $75,000;

(7) LGH executed and delivered to Kadilac mortgages on the Babylon and Sayville Properties to secure the loans;

(8) Both mortgages are in default; and

(9) There are no prior liens of record on either parcel of real estate.

LGH filed no response to Kadilac's Rule 22(b) Statement, so all its recitals are admitted.

## DISCUSSION

■ New York's General Obligations Law bars a corporation from claiming civil usury.[3] N.Y.Gen.Oblig.Law § 5–521(1) (McKinney 1989).

■ Section 5–521(2) contains an exception to this bar for certain corporations. The bar does not apply to a

corporation, the principal asset of which shall be the ownership of a one or two family dwelling, where it appears either that the said corporation was organized and created, or that the controlling interest therein was acquired, within a period of six months prior to the execution, by said corporation of a bond or note evidencing indebtedness, and a mortgage creating a lien for said indebtedness on the said one or two family dwelling ...

But Kadilac's Rule 22(b) Statement establishes that LGH was formed at least nine years prior to the execution of the notes and mortgages; that the controlling interest in LGH was acquired by Lance Galvin nine months prior to the execution of the notes and mortgages here involved; and that LGH owned at least three parcels

---

**3.** A corporation is only barred from raising the defense of *civil* usury. Although § 5–521(3) allows a corporation to interpose the defense of *criminal* usury as defined in New York Penal Law § 190.40, LGH's complaint does not assert criminal usury.

of real property at the time of the execution. Therefore, LGH does not come within the exception carved out by Section 5–521(2) from the bar of the defense of usury to a corporation.

■ Even if, as the complaint asserts, one of the properties was transferred to LGH for the purpose of making the loan this fact would give the corporation no ground for claiming usury.

■ As for the suggestion in LGH's affirmation in opposition to Kadilac's motion that one Lynne Biancone, a sister of Lance Galvin who evidently had jointly owned the Babylon Property with him prior to its transfer to LGH, had not consented to the transfer, clouding LGH's title cannot defeat Kadilac's right to summary judgment in this adversary proceeding brought by LGH.[4] If LGH is not the owner of the property it has defrauded Kadilac by purporting to give a mortgage on the property as security. In that event, the mortgage would be void not for usury, but because given by someone not the owner. LGH cannot escape the mortgage it gave Kadilac by claiming that it lacked title to the property it purported to mortgage.

### The Federal Statute

■ Even if LGH were not barred as a corporation from claiming civil usury, Kadilac comes squarely within the protection of 12 U.S.C. § 1735f–7(a) exempting mortgage loans by approved lenders made after March 31, 1980 from state usury statutes.

12 U.S.C. § 1735f–7(a) exempts from the provisions of any state constitution or law limiting the interest which may be charged any loan or mortgage which meets certain conditions. Omitting the alternatives which do not apply to the facts in this proceeding, the conditions which must be met are: (1) the mortgage must be a first lien on residential real property; (2) it must be made after March 31, 1980; and (3) it must be of the character covered by Section 527(b) of the National Housing Act (12

U.S.C. § 1735f–5(b)) which, again ignoring inapplicable alternatives, means any loan made by any lender regulated by any agency of the Federal Government. 12 U.S.C. § 1735f–5(b)(2)(A).

Kadilac's unrebutted Rule 22(b) Statement establishes that Kadilac is a federally approved mortgage lender, regulated by several agencies of the Federal Government. Both mortgages here involved were made after March 31, 1980 and both are secured by first liens on the residential real properties which they cover.

■ The Debtor adds requirements to the statute which are not there when he argues that the mortgages are not covered by the federal statute because neither was a purchase money mortgage and one was taken out for refinancing. It is not material whether or not they were purchase money mortgages or taken out to refinance the underlying loans. All the statute requires is that each mortgage be a first lien. That each was a first lien is established by Kadilac's Rule 22(b) Statement asserting there to be no prior liens of record on either parcel covered by the two mortgages.

■ The Debtor also misreads the federal regulations issued by the Office of Thrift Supervision, Department of the Treasury governing federally-related mortgage loans. 12 C.F.R. § 590.2 (1992). The regulations are concerned with when a leasehold or subleasehold interest is an interest in real estate for the purposes of the statute. To qualify, a leasehold must extend or be renewable automatically for a period of at least five years beyond the maturity of the loan. That requirement has no application to an interest in real estate in fee. The Debtor misreads the regulations in believing that for a loan to be placed outside state usury laws, it must be one for five years or longer. 12 C.F.R. § 590.2(c) (1992).

### CONCLUSIONS OF LAW

1. Because this is a proceeding objecting to the claims filed by secured lenders

---

4. The notarized statement of Lynne C. Biancone states "I did not ever intend to, did not authorize, consent to, nor did I in fact sign any documents for Mr. Rick Constantino (the attorney who handled this matter). I never would have allowed such a transfer of my property to take place ... [a]t no time was I a participant in any such alleged transfer."

and seeking to avoid their liens it is a core proceeding covered by 28 U.S.C. § 157(b)(2)(B) and (K).

2. LGH is a corporation and therefore, cannot void as usurious under the laws of New York State covering civil usury the mortgages it gave Kadilac on its Sayville and Babylon Properties.

3. Kadilac is a lender regulated by agencies of the Federal Government and the mortgages challenged in this proceeding were made after March 31st, 1980, and were each secured by a first lien on residential real property and therefore are exempt from New York's usury laws.

4. LGH is not entitled to a judgment expunging and voiding Kadilac's mortgages on the Debtor's property at 29 Green Avenue, Sayville, New York and on 7 Park Avenue in Babylon, New York.

5. The complaint is dismissed. Each party to bear its own costs.

Settle Judgment.